IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NORTH AMERICAN COMPANY FOR LIFE
AND HEALTH INSURANCE,

                              Plaintiff,

              v.

BRANDON D. REED,

                              Defendant.

Case No. 3:24-cv-01053-SB

**FINDINGS AND
RECOMMENDATION**

---

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiff North American Company for Life and Health Insurance ("Plaintiff") filed this

diversity action against its insured, Defendant Brandon Reed ("Defendant"), on June 27, 2024.

Plaintiff seeks a declaratory judgment rescinding the $500,000 life insurance policy that it issued

to Defendant based on false and material misrepresentations that Defendant made in his policy

application.

After Defendant failed to appear or otherwise defend and the clerk entered Defendant's

default, Plaintiff moved for default judgment under Federal Rule of Civil Procedure ("Rule")

55(b)(2). The Court has jurisdiction under 28 U.S.C. § 1332(a)(1), but not all parties have

consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c). For the reasons

PAGE 1 – FINDINGS AND RECOMMENDATION

explained below, the Court recommends that the district judge grant Plaintiff's motion for default judgment.

## BACKGROUND

### I.     FACTS[1]

Plaintiff is a life insurance company and Iowa corporation with its principal place of business in West Des Moines, Iowa. (Compl. ¶¶ 5, 7, ECF No. 1.) Defendant is an Oregon citizen who, at all relevant times, resided at 3255 NE Prescott Street in Portland, Oregon. (*Id.* ¶¶ 6-7.)

On July 15, 2022, Defendant applied for a $500,000 life insurance policy on Plaintiff's online platform. (*Id.* ¶¶ 6, 9.) In signing his application, Defendant certified that his responses were "complete and true to the best of his knowledge and belief," and "acknowledged that any person 'who knowingly present[ed] a false statement in an application for insurance may be guilty of a criminal offense and subject to penalties under state law.'" (*Id.* ¶ 10.) Defendant also agreed to the application's "Effective Date" clause, which provided that "no coverage would go into effect" if Defendant was not in the financial condition and state of health that he described. (*Id.* ¶ 11.)

Relying on Defendant's certification, responses to its underwriting questions, and assent to the application's terms, Plaintiff issued a $500,000 life insurance policy to Defendant on the same day that he submitted his application. (*Id.* ¶¶ 12-13.) In conducting its post-issuance quality control review, Plaintiff obtained Defendant's medical and court records to verify the truth and

---

[1] Following entry of default, "the factual allegations of the complaint, except those relating to the amount of damages, [are] taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citation omitted); FED. R. CIV. P. 8(b)(6) (stating that the "effect of failing to deny" is that "[a]n allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied") (simplified).

accuracy of his representations. (*Id.* ¶¶ 14, 24.) Defendant's records demonstrated that he was not in the state of health that he described and that despite denying such a criminal history, he had been "convicted, pleaded guilty, or had charges pending in the past ten years for any misdemeanor, felony, or [driving under the influence/driving while intoxicated] charges." (*Id.* ¶¶ 14-26, 35-36.)

In particular, and relevant to his denial of alcohol-related criminal history, Defendant's medical records demonstrated that (1) in the previous ten years, medical professionals had diagnosed him with or treated him for chest pain, alcohol abuse (multiple occasions), and one or more of the listed mental health disorders (depression and anxiety), and (2) he consumed more than five alcoholic drinks per week (up to thirty-five weekly drinks). (*Id.* ¶¶ 15-26, 35-36.) If he disclosed this information, Defendant would have received an "automatic and outright rejection" based on the underwriting standards that Plaintiff programmed into its online policy application platform. (*Id.* ¶ 27.)

Given its discoveries and concerns about additional misrepresentations and omissions affecting the risks it assumed, Plaintiff sent emails and letters to the addresses that Defendant provided on his application. (*Id.* ¶¶ 29-30.) In exchange for Defendant's "consent to the invalidity and rescission of the policy [and] to avoid the costs and expenses of litigation," Plaintiff's initial emails and letters (none of which were returned as undeliverable) offered to "restore [Defendant] to his pre-application . . . position by tendering a refund of all premiums paid on the policy, plus interest." (*Id.* ¶ 30.) Defendant did not respond. (*Id.* ¶ 31.)

## II.    PROCEDURAL HISTORY

On June 27, 2024, less than two years after issuing Defendant's policy, Plaintiff filed this case in the U.S. District Court for the District of Oregon. (*Id.* at 13.) Plaintiff invokes the Court's diversity jurisdiction under 28 U.S.C. § 1332(a)(1), and seeks a declaration under the

PAGE 3 – FINDINGS AND RECOMMENDATION

Declaratory Judgment Act, 28 U.S.C. § 2201(a), rescinding the policy. (*Id.* ¶¶ 7, 34.) In the alternative, Plaintiff seeks a declaration that the policy was "void *ab initio*—null from the beginning," *WB Music Corp. v. Royce Int'l Broad. Corp.*, 47 F.4th 944, 950 (9th Cir. 2022), because Defendant was not in the state of health that he described in his application and thus he failed to satisfy an "express condition precedent necessary to form a valid contract." (Compl. ¶ 44; ECF No. 14 at 2.)

On July 24, 2024, about one month into this litigation, the Court granted Plaintiff's motion to effect service by publication and for an extension of time in which to do so. (ECF Nos. 7, 8.) Plaintiff filed proof of service and moved for entry of default on September 26, 2024. (ECF Nos. 10-11.)

Given Defendant's failure to appear or otherwise defend, the clerk entered Defendant's default (ECF No. 12) in accordance with Rule 55(a). *See* FED. R. CIV. P. 55(a) (stating that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default"). Plaintiff subsequently moved under Rule 55(b)(2) for default judgment. (ECF No. 13.)

## LEGAL STANDARDS

"In reviewing a [motion for] default judgment, [a] court takes 'the well-pleaded factual allegations' in the complaint 'as true.'" *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) (quoting *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992)). A court, however, does not accept as true factual allegations "relating to the amount of damages." *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) (citing *Pope v. United States*, 323 U.S. 1, 12 (1944)). Nor does a court accept as "admit[ted] facts that are not well-pleaded or [amount to] conclusions of law." *DIRECTV*, 503 F.3d at 854 (simplified). Thus, "[n]ecessary

facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps*, 980 F.2d at 1267 (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)).

The "decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (per curiam) (citations omitted). A court's "starting point" is "the general rule that default judgments are ordinarily disfavored[, as] [c]ases should be decided upon their merits whenever reasonably possible." *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 616 (9th Cir. 2016) (quoting *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986)). A court then looks to the factors that the Ninth Circuit set forth in *Eitel* to "guide [a] court's determination regarding the appropriateness of granting a default judgment[.]" *DIRECTV*, 503 F.3d at 852 (citing *Eitel*, 782 F.2d at 1471-72); *see also NewGen*, 840 F.3d at 616 (identifying the "starting point" and how a court "then look[s] to the [*Eitel*] factors"). The seven "*Eitel*" factors are:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel*, 782 F.2d at 1471-72 (citation omitted); *see also NewGen*, 840 F.3d at 617 (explaining that "[w]hile there [was] room to disagree whether default was warranted," the Ninth Circuit's "role [on appeal was] not to second guess the district court's weighing of the *Eitel* factors," and "thus conclud[ing] that the district court's decision to enter default judgment was not an abuse of discretion").

///

///

///

PAGE 5 – FINDINGS AND RECOMMENDATION

**DISCUSSION**

Plaintiff moves for entry of default judgment under Rule 55(b)(2). (Pl.'s Mot. Entry Default J. ("Pl.'s Mot.") at 1, ECF No. 13.) The Court concludes that the *Eitel* factors weigh in favor of entering default judgment, and therefore recommends that the district judge grant Plaintiff's motion.

## I.    THRESHOLD MATTERS

### A.    Applicable Law

"A district court 'has an affirmative duty' to determine whether it has subject-matter jurisdiction and personal jurisdiction over the defendant before entering a default judgment." *Durland v. Straub*, No. 3:20-cv-00031-IM, 2022 WL 2704169, at *2 (D. Or. July 12, 2023) (quoting *Tuli v. Republic of Iraq (In re Tuli)*, 172 F.3d 707, 712-13 (9th Cir. 1999)). A default judgment is void if a district court lacks subject matter or personal jurisdiction, or the defendant has not been served in accordance with Rule 4. *See Chambers v. Knight*, No. 20-56141, 2021 WL 4811360, at *1 (9th Cir. Oct. 15, 2021) (subject matter jurisdiction); *In re Tuli*, 172 F.3d at 712 (personal jurisdiction); *Bank of N.Y. Mellon v. Loyo-Morales*, No. 21-16041, 2022 WL 1616980, at *1 (9th Cir. May 23, 2022) ("A federal court is without personal jurisdiction over a defendant unless the defendant has been served in accordance with [Rule] 4." (quoting *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986))); *Herbalife Int'l of Am., Inc. v. Healthy1 Inc.*, 830 F. App'x 801, 803 (9th Cir. 2020) ("A default judgment is void if the defendant 'has not been made a party by service of process.'" (quoting *Mason v. Genisco Tech. Corp.*, 960 F.2d 849, 851 (9th Cir. 1992))).

///

///

///

**B.    Analysis**

**1.    Subject Matter Jurisdiction**

A district court has diversity jurisdiction in "civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[.]" 28 U.S.C. § 1332(a)(1). "[I]n declaratory judgment actions about whether an insurance policy is in effect or has been terminated, the policy's face amount is the measure of the amount in controversy." *Elhouty v. Lincoln Benefit Life Co.*, 886 F.3d 752, 755 (9th Cir. 2018).

In *Elhouty*, for example, the Ninth Circuit considered sua sponte whether the district court had subject matter jurisdiction in a declaratory judgment action about a life insurance policy. *Id.* at 754. The policy had a "$2 million face amount," and the insured and insurer, who were "completely diverse," disputed whether the policy "remained in full force" or "lapsed" based on the insured's failure to "pay what the policy required." *Id.* Recognizing that the "case concern[ed] whether the policy remain[ed] in force or was instead properly terminated," the Ninth Circuit distinguished cases that did not involve policy validity and cited favorably to one of its past decisions recognizing that "when a policy's validity is at issue, the policy limit is the amount in controversy." *Id.* at 755-56 (first citing *N.Y. Life Ins. Co. v. Viglas*, 297 U.S. 672, 676-77 (1936); then citing *Keck v. Fidelity & Cas Co. of N.Y.*, 359 F.2d 840, 841-42 (7th Cir. 1966); and then citing *Budget Rent-A-Car, Inc. v. Higashiguchi*, 109 F.3d 1471, 1473 (9th Cir. 1997)). Considering that "the policy's $2 million face amount [was] the value of the matter in controversy," the Ninth Circuit held that "[t]he district court properly exercised jurisdiction." *Id.* at 756.

The parties here are completely diverse (Plaintiff is an Iowa corporation and Defendant is Oregon citizen), the validity of Defendant's life insurance policy is at issue, and the policy's

$500,000 face amount exceeds the $75,000 amount in controversy requirement. (Compl. ¶¶ 5-7, 9, 33-45.) Accordingly, the Court has diversity jurisdiction over this matter under 28 U.S.C. § 1332(a)(1). *See N. Am. Co. for Life & Health Ins. v. Moua*, No. 1:22-cv-01293, 2023 WL 4409570, at *1-5 (E.D. Cal. July 7, 2023) (granting the same insurer's motion for default judgment where, as here, it filed a "diversity action," did not seek damages, and sought a declaratory judgment rescinding and setting aside a $100,000 life insurance policy "as null and *void ab initio*"), *findings and recommendation adopted*, 2023 WL 5628729, at *1-2 (E.D. Cal. Aug. 31, 2023).

In this context, courts must also be satisfied that they are presiding over a "case of actual controversy," i.e., a case of "sufficient immediacy and reality to warrant the issuance of a declaratory judgment," and consider that they retain discretion to decide "whether to entertain declaratory judgments . . . [and] declare the rights . . . of any interested party." *N. Am. Co. for Life & Health Ins. v. Lata*, No. 2:23-cv-00574, 2024 WL 1344592, at *3-4 (E.D. Cal. Mar. 29, 2024) (first quoting 28 U.S.C. § 2201; then quoting *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 671 (9th Cir. 2004); and then quoting *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994)). The Court finds that this is a "case of actual controversy" because Defendant has not agreed or responded to Plaintiff's repeated requests to rescind the policy, and it is appropriate to exercise jurisdiction over Plaintiff's request for a declaratory judgment rescinding the policy. *See id.* (finding that there was "more than 'an abstract or hypothetical disagreement' over the issues of whether the policy should be declared rescinded" because the defendant had "not agreed to rescind the policy" and finding it "proper to exercise jurisdiction over the recission claim") (simplified); *see also Moua*, 2023 WL 4409570, at *1-5 (exercising jurisdiction in a similar case).

PAGE 8 – FINDINGS AND RECOMMENDATION

### 2.    Personal Jurisdiction

Plaintiff alleges that Defendant resided at all relevant times at his home in Portland, including when he completed, signed, and submitted his July 15, 2022 application for the $500,000 life insurance policy, and Plaintiff discovered his misrepresentations and attempted to reach an agreement with him on rescinding the policy. (Am. Compl. ¶¶ 1-2, 6-7, 9, 30.) Plaintiff alleges sufficient facts to support the Court's exercise of personal jurisdiction over Defendant. *See also First Nat'l Ins. Co. of Am. v. Hartley*, No. 8:24-cv-00124, 2024 WL 4443839, at *1 (C.D. Cal. Sept. 4, 2024) (reflecting that the court entered default judgment in an action seeking rescission of a policy and stated that it could "exercise general personal jurisdiction" over the "[d]efendants because [the] [p]laintiff alleges that each of the . . . [d]efendants [was] a citizen of California, the forum state"); *cf. J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880-81 (2011) (describing examples supporting the exercise of general jurisdiction and ways a person may submit to a state's authority, such as citizenship, domicile, or presence "through service of process").

### 3.    Service of Process

Plaintiff has also demonstrated that it adequately served Defendant. *See generally Anderson v. Ross Island Sand & Gravel Co.*, No. 3:18-cv-00549-SB, 2018 WL 3947018, at *1 (D. Or. July 11, 2018) (explaining that a "district court has discretion to grant a motion for default judgment provided jurisdiction is proper and there was adequate service on defendant"); *Bank of N.Y. Mellon*, 2022 WL 1616980, at *1 ("A federal court is without personal jurisdiction over a defendant unless the defendant has been served in accordance with [Rule] 4.") (citation omitted).

Rule 4(e) describes several methods for serving individual defendants in federal lawsuits, including "following state law . . . in the state where the district court is located or where service

is made[.]" FED. R. CIV. P. 4(e)(1). Under Oregon Rule of Civil Procedure 7(D), a plaintiff may

serve an individual defendant by (1) "personal service on the individual or an authorized agent,"

(2) "delivering copies of the summons and the complaint to the home of the individual and

leaving it with a resident who is over fourteen years of age," (3) "leaving a copy of the complaint

and summons at the individual's office during normal working hours 'with the person who is

apparently in charge,'" or (4) "mailing the copy of the summons and complaint to the individual

by first-class certified, registered, or express mail with return receipt requested." *Amica Mut. Ins.*

*Co. v. Martinez*, No. 3:19-cv-00463-SB, 2019 WL 5063827, at \*2 (D. Or. Oct. 9, 2019) (quoting

OR. R. CIV. P. 7(D)(1)); *see also Walker ex rel. K.B. v. Portland Pub. Sch. Dist. No. 1J*, No.

3:21-cv-01349-IM, 2023 WL 2898927, at \*2 (D. Or. Mar. 15, 2023) (same); OR. R. CIV. P.

7(D)(3)(a)(i)-(iv) (authorizing these methods and describing inapplicable restrictions and

requirements).

ORCP 7(D) also authorizes service by publication under certain circumstances. *See*

*Amica*, 2019 WL 5063827, at \*1-2 (citing OR. R. CIV. P. 7(D)(6)(a)); *see also* OR. R. CIV. P.

7(D)(1) (recognizing "service by publication" as a permissible method of service). Specifically,

ORCP 7(D) provides that if plaintiff files a motion and declaration or affidavit demonstrating

that service could not be "made by any method otherwise specified in these rules or other rule or

statute," a "court, at its discretion, may order service by any method or combination of methods

which under the circumstances is most reasonably calculated to apprise the defendant of the

existence and pendency of the action, including . . . publication of summons[.]" *Amica*, 2019 WL

5063827, at \*2 (quoting OR. R. CIV. P. 7(D)(6)(a)). If a court exercises this discretion, its "order

for publication [must] direct publication to be made in a newspaper of general circulation in the

county where the action is commenced, or if there is no such newspaper, then in a newspaper to

PAGE 10 – FINDINGS AND RECOMMENDATION

be designated as most likely to give notice to the person to be served." *Id.* (quoting OR. R. CIV. P. 7(D)(6)(c)).

Plaintiff moved under Rules 4(e)(1) and 4(m) to effect service by publication and for an extension of time to do so. (Pl.'s Mot. Alternative Serv. & Ext. Time ("Pl.'s Serv. Mot.") at 1, ECF No. 7.) Plaintiff also filed its counsel's and private investigators' declarations in support. (*See* Decl. Sarah Mueller ("Mueller Decl.") ¶¶ 1-7, ECF No. 7-2; Decl. Layne Rockford ("Rockford Decl.") ¶¶ 1-5, ECF No. 7-3; Decl. Edward Dethloff ("Dethloff Decl.") ¶¶ 1-5, ECF No. 7-4.)

Plaintiff's initial private investigator obtained a background report confirming that (1) the address Defendant provided on his application and referenced in Plaintiff's complaint is Defendant's "primary address based on active voter registrations for [Defendant] and his wife, active vehicles in his name, and three Oregon corporation filings, two of which were processed in January 2024," and (2) Defendant owns a farming business with a principal place of business at 39391 SE Luster Road, Sandy, Oregon 97055." (Rockford Decl. ¶¶ 2-4; *cf.* Am. Compl. ¶¶ 6, 30.)

Plaintiff's counsel and initial private investigator described numerous unsuccessful attempts to reach Defendant at the addresses above (in person and by mail) and at the number and email address that Defendant provided on his application. (Mueller Decl. ¶¶ 1-6; *id.* Exs. 1-4; Rockford Decl. ¶¶ 1-5; *id.* Exs. E-F.) As a result, Plaintiff retained a second private investigator, who visited both addresses in an attempt to effect personal, substitute, and/or office service on Defendant. (Dethloff Decl. ¶¶ 1-5.) Plaintiff's second private investigator "did not observe any individuals coming or going" from Defendant's Portland address and discovered that the property was now "uninhabited and cleaned out." (*Id.* ¶ 2.) Defendant's iPhone's "read

receipts" setting confirmed that he read the investigator's text message seeking a mutually convenient time and place to effect personal service, but Defendant never responded to the text message. (*Id.* ¶¶ 2-4.) When the investigator visited Defendant's business address in Sandy, he "observed no one coming and going" but could not access the property, which had a "fence that spanned the perimeter," because there were "no trespassing" signs on the "closed gated without a call box[.]" (*Id.* ¶ 5.)

In addition to these efforts, Plaintiff's counsel sent letters to Defendant's "two known addresses . . . by regular U.S. Mail (first class) and certified mail (return receipt requested)." (Mueller Decl. ¶ 7.) Each letter enclosed the summons and complaint. (*Id.*) Defendant did not respond and only the "two letters" that counsel sent to the Portland address were returned as undeliverable. (*Id.*)

Having "pursued all viable methods of service permitted [under Rule 4 and ORCP 7] without success," Plaintiff filed a motion seeking leave to effect service by publication and an extension of time in which to do so. (Pl.'s Mem. Supp. Serv. Mot. at 5, ECF No. 7-1; Pl.'s Serv. Mot. at 1.) The Court granted Plaintiff's motion to effect service by publication on July 24, 2024. (ECF No. 8.) In its Order, the Court instructed Plaintiff to publish a summons, as described under ORCP 7(D), in the *Daily Journal of Commerce* (i.e., a generally circulated publication in the counties of Defendant's last known personal and business addresses) for four consecutive weeks. (*See id.*) Plaintiff did so on August 7, August 14, August 21, and August 28, 2024. (ECF No. 10 at 1-2.)

On this record, the Court concludes that it has personal jurisdiction over Defendant because Plaintiff has demonstrated that it effected service by publication on Defendant. *See Amica*, 2019 WL 5063827, at *2 (recognizing that "newspapers [that] are generally circulated

publications in the counties of [the defendant's] last known addresses . . . are most likely to provide [the defendant] with notice of th[e] action," and ORCP 7(D)(6)(c) requires publication "four times in successive calendar weeks"); *see also Moua*, 2023 WL 4409570, at *3 (noting that the district court granted default judgment after granting the insurer's Rule 4(m) motion for extension of time in which to effect service by publication under state law, and stating the insurer completed "service by publication and filed its Notice of Proof of Service by Publication on March 2, 2023, showing that the Summons was published on February 9, February 16, February 23, and March 2").

## II.    *EITEL* FACTORS

The Court concludes that on balance, the *Eitel* factors weight in favor of entering default judgment.

### A.    First Factor

In evaluating whether to enter default judgment, a court first considers "the possibility of prejudice to the plaintiff[.]" *NewGen*, 840 F.3d at 616 (quoting *Eitel*, 782 F.2d at 1471). Plaintiff argues that it would suffer prejudice in the absence of a default judgment because Defendant has refused to consent to rescission of the policy, accept service, or answer following service by publication, leaving Plaintiff with no alternative means by which it may obtain relief. (Pl.'s Mot. at 5.)

The Court agrees that the first factor weighs in favor of default judgment. *See Moua*, 2023 WL 4409570, at *3 (holding that this factor weighed in favor of granting default judgment because the insurer "may be prejudiced if the [p]olicy [was] not rescinded [after the] [d]efendant obtained the policy by misrepresenting [her insured and now deceased father's] health and medical history"); *Garcia v. Pacwest Contracting LLC*, No. 3:12-cv-01930-SI, 2016 WL 526236, at *3 (D. Or. Feb. 9, 2016) (finding that the first factor "weigh[ed] in favor of granting"

the plaintiffs' motion for default judgment because they had "no alternative means by which to resolve their . . . claims against [the defendant]" (citing *Minn. Life Ins. Co. v. Gomez*, No. 14-00866, 2015 WL 4638351, at *4 (D. Ariz. Aug. 4, 2015))); *Durland*, 2022 WL 2704169, at *1 ("Given [the] [d]efendants' failure to cooperate in this lawsuit and [the] [p]laintiffs' lack of alternative avenues of recovery, [the] [p]laintiffs would suffer prejudice if default judgment is not entered.").

### B.    Second and Third Factors

The second and third *Eitel* factors are "the merits of [the] plaintiff's substantive claim, [and] the sufficiency of the complaint[.]" *NewGen*, 840 F.3d at 616 (quoting *Eitel*, 782 F.2d at 1471). "These two factors are often analyzed together and require courts to consider whether a plaintiff has state[d] a claim on which [it] may recover." *Dunlap*, 2022 WL 2704169, at *3 (quoting *Viet. Reform Party v. Viet Tan-Viet. Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019)); *see also Garcia*, 2016 WL 526236, at *3 (explaining that "[t]he Ninth Circuit has suggested that [the second and third *Eitel*] factors require that a plaintiff's allegations 'state a claim on which the [plaintiff] may recover'" (quoting *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)).

In analyzing the second and third factors, the Court "takes 'the well-pleaded factual allegations' in the complaint 'as true.'" *DIRECTV*, 503 F.3d at 854 (quoting *Cripps*, 980 F.2d at 1267). The Court, however, does not accept as true factual allegations "relating to [any] amount of damages," *Geddes*, 559 F.2d at 560 (citing *Pope*, 323 U.S. at 12), or accept as "admit[ted] facts that are not well-pleaded or [amount to] conclusions of law." *DIRECTV*, 503 F.3d at 854 (simplified).

In Oregon, an insurer can establish a right to rescission by demonstrating that in issuing the policy, it relied on the insured's false representations, which were material to its decision to

accept the risk. (*See* Def.'s Mot. at 5-6, citing *Story v. Safeco Life Ins. Co.*, 40 P.3d 1112, 1116 (Or. Ct. App. 2002)); *see also Story*, 40 P.3d at 1116 (noting that an insured must have knowingly made false representations or recklessly made such representation without knowledge of their truth or falsity).

Plaintiff alleges that in addition to Defendant's false representation that he lacked any time-relevant or alcohol-related criminal history, Defendant's medical records demonstrated that (1) in the previous ten years, medical professionals had diagnosed him with or treated him for chest pain, alcohol abuse (multiple occasions), and one or more listed mental health disorders (i.e., depression and anxiety), and (2) he consumed more than five alcoholic drinks per week (up to thirty-five weekly drinks). (Am. Compl. ¶¶ 15-26, 35-36.) Furthermore, Plaintiff alleges that if Defendant had disclosed this information, he would have received an "automatic and outright rejection" based on the underwriting standards that its programmed into its online platform. (*Id.* ¶ 27.)

In *Moua*, the district court applied similar state law on material misrepresentations entitling an insurer to rescind a policy and found that the second and third factors favored entering default judgment. 2023 WL 4409570, at *4. In so finding, the district court explained that the insurer's now "admitted allegations establish[ed]" that the deceased insured and his beneficiary daughter failed to "respond accurately to various questions" in the application and statement of health and "disclose in [the same] documents [the insured's] accurate medical and health history," and the insurer's allegations also "establish[ed] that if [the insured] and [his daughter] had accurately responded to these questions," it "would not have issued the [p]olicy to [him]." *Id.*

///

Similar to the district court's decision in *Moua*, the Court finds that Plaintiff has plausibly alleged that it is entitled to rescission of Defendant's life insurance policy because (1) when it issued this policy, it relied on Defendant's false and material misrepresentations (i.e., he lacked any time-relevant medical or criminal history related to alcohol abuse, chest pain, or mental health disorders), and (2) if Defendant disclosed this history, Plaintiff would have denied the application. Accordingly, the Court finds that the second and third factors favor entering default judgment.

### C.    Fourth Factor

The fourth *Eitel* factor is "the sum of money at stake in the action[.]" *NewGen*, 840 F.3d at 616 (quoting *Eitel*, 782 F.2d at 1471). Plaintiff does not request any damages; rather, it "only seeks a declaration that the subject policy is rescinded and, in the alternative, void at the outset due to the failure of an express condition precedent." (Pl.'s Mot. at 7; Am. Compl. at 11-12.) Accordingly, the Court concludes that the fourth factor favors default judgment. *See Moua*, 2023 WL 4409570, at *4 (finding that this factor favored entering default judgment because the insurer sought "no monetary damages" and "request[ed] only that the [c]ourt rescind an insurance policy"); *Hartley*, 2024 WL 4443839, at *5 (stating that the fourth factor favors default judgment when the plaintiff "only seeks rescission and declaratory relief, [and] the amount of money at stake is not at issue" (first quoting *Certain Underwriters at Lloyds, London v. Triduanum Fin., Inc.*, No. 10-cv-00116, 2011 WL 6002916, at *4 (E.D. Cal. Nov. 30, 2011), *findings and recommendation adopted*, 2012 WL 78649, at *1 (E.D. Cal. Jan. 9, 2012); and then citing *Lata*, 2024 WL 1344592, at *6)).

### D.    Fifth Factor

The fifth *Eitel* factor concerns "the possibility of a dispute concerning material facts[.]" *NewGen*, 840 F.3d at 616 (quoting *Eitel*, 782 F.2d at 1471-72). Courts in this circuit have noted

that the fifth factor favors default judgment "when the claims in the complaint are well-pleaded," and "the defendant makes no effort to properly respond, the likelihood of disputed facts is very low.'" *Durland*, 2022 WL 2704169, at *7 (first quoting *Joe Hand Prods. v. Holmes*, No. 2:12-cv-00535-SU, 2015 WL 5144297, at *7 (D. Or. Aug. 31, 2015); and then quoting *3M Co. v. Phx. Auto. Refinishing Co., Ltd.*, No. 17-cv-00649, 2018 WL 1989536, at *5 (C.D. Cal. Apr. 25, 2018)). Consistent with these decisions, the Court concludes that the fifth factor favors entering default judgment. *See id.* (finding that the fifth factor favored default judgment for the same reasons).

### E.    Sixth Factor

The sixth *Eitel* factor is "whether the default was due to excusable neglect[.]" *NewGen*, 840 F.3d at 616 (quoting *Eitel*, 782 F.2d at 1472). Considering Plaintiff's declarations regarding its efforts to contact and serve Defendant, it is unlikely that Defendant's default was due to excusable neglect. Accordingly, the Court finds that this factor favors default judgment. *See Rubi v. Dynamic Change Inc.*, No. 3:17-cv-01531-HZ, 2019 WL 720977, at *4 (D. Or. Feb. 20, 2019) (noting that the plaintiff "demonstrated due diligence" and "attempt[ed] several methods of service," and as a result, "the likelihood of excusable neglect [was] remote") (simplified).

### F.    Seventh Factor

The seventh *Eitel* factor is "the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *NewGen*, 840 F.3d at 616 (quoting *Eitel*, 782 F.2d at 1472). "[A]lthough public policy disfavors default judgments, judgment on the merits is impossible when Defendants have not appeared." *Lunceford v. Carson*, No. 3:22-cv-1387-SI, 2023 WL 9179204, at *1 n.1 (D. Or. July 28, 2023). Given this reality, the Court concludes that the seventh and final factor does not weigh against granting Plaintiff's motion for default judgment.

PAGE 17 – FINDINGS AND RECOMMENDATION

### G.    Conclusion

The Court concludes that on balance, the *Eitel* factors weigh in favor entering default judgment, and therefore recommends that the district judge grant Plaintiff's motion for default judgment. *See Moua*, 2023 WL 4409570, at *5 (recommending that "[t]he district court enter judgment against [the insured] and order that [the policy that the insurer] issued to [the insured was] rescinded and set aside as null and void *ab initio*"); *Lata*, 2024 WL 1344592, at *6 (same).

## CONCLUSION

For the reasons stated, the Court recommends that the district judge GRANT Plaintiff's motion for entry of default judgment (ECF No. 13), and enter final judgment (i) declaring that Defendant's policy (identified in the complaint as "Policy '155") is rescinded because of Defendant's material misrepresentations and omissions in his application or, alternatively, the insurance contract is void *ab initio* because of the failure of the condition precedent that Defendant must be in the state of health described in the application; and (ii) declaring that neither Defendant, nor any putative beneficiary or other person, has any rights or interests in Policy '155, including, without limitation, any potential right to the payment of death benefits otherwise payable upon the death of an insured under an enforceable, in-force insurance contract. (*See* ECF No. 14 at 1-2.)

///

///

///

///

///

///

///

PAGE 18 – FINDINGS AND RECOMMENDATION

## SCHEDULING ORDER

The Court will refer its Findings and Recommendation to a district judge. Objections, if any, are due within fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, the Findings and Recommendation will go under advisement on that date. If objections are filed, a response is due within fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 27th day of January, 2025.

HON. STACIE F. BECKERMAN
United States Magistrate Judge